The Jewelcor case.  May it please the Court, my name is Attorney Robert N. Wallace. I'm with the law firm of Dorn & Wallace & Dorn in Wilkes-Barre, Pennsylvania. We represent the appellants George Karfunkel, Michael Karfunkel, and M & G Equities. I would like to reserve one minute before rebuttal. Go ahead. Jewelcorp began this adverse proceeding by filing an eight-count complaint. Most of the counts were directed against M & G Equities, and some of the counts were directed against the Salvation Army. By the time of trial, all counts were settled or dismissed except count one, which was directed solely against M & G Equities. Accordingly, the sole basis for any award against M & G is count one of the complaint. Count one is phrased as an action for breach of lease for M & G's eviction of Jewelcor from the commercial premises. The wrongful action which formed the basis for count one occurred in 1991. The complaint in this case was not filed until July 15, 1999, eight years later. After Jewelcor's file, M & G moved to dismiss, pursuant to Federal Rule 12b-6 on the basis of the statute of limitations. The district court denied the motion. We believe that the district court erred in denying the motion. The initial question is, which statute of limitations applies? 42 Pennsylvania Consolidated Statutes 5524 provide for two-year statute of limitations for an action for waste or illegal property. If section 5524 applies, count one would be time borne after August 1993. But that's not really a likely applicable statute, is it? Well, there's two reasons I think it might be, Judge. First is the Farber v. Blumenthal case in which the court talked in terms of if the plaintiff is entitled to damages for an eviction, he may recover against all who participated in the trespass. So Pennsylvania cases have characterized evictions as trespasses. And the second and more compelling reason, I believe, is the policy which embodies or underlies the 1976 reorganization of Pennsylvania's statute of limitations. That favors a two-year statute of limitations. In the case of Pennsylvania v. Beers, the Superior Court, quoting the Pennsylvania Bar Association judicial code in explanation of the changes in the statutes, held that moderate practice principles dictate that claims based upon conduct and, therefore, heavily relying on unwritten evidence, should have a short statute of limitations so that suits may be brought before memories have faded. Accordingly, both the case authority we cited and the public policy underlying the reformation of the statute of limitations section would argue in favor of a two-year statute. However, whether Section 5524 or 55258 applies, the District Court had no authority to grant dual-courts relief if dual-court could not have recovered in state court. A federal court sitting in a diversity case adjudicating state-created rights cannot afford a party recovery if recovery would be unavailable in a state court. And we cite Guarantee Trust Company of New York v. York and other cases of like result for that proposition. The District Court utilized 42 Pennsylvania Statutes 5535A to save dual-courts count one of its complaint. 5535A, with certain limitations, allows the commencement of a new suit within one year of the termination of a dismissed suit. However, Pennsylvania has long held that an action in state court does not toll the running of the statute of limitations against a subsequent action in federal court, nor does an action in one state toll the statute of limitations from running in another state, nor is the statute of limitations tolled in a state action by the filing of a federal action. Nevertheless, the District Court held that the filing of a bankruptcy court complaint somehow tolled the running of the statute of limitations on dual-courts subsequently filed diversity action. Under controlling Pennsylvania authority, dual-courts claim would have been barred if it were brought in state court. A different result cannot be obtained by the filing of a diversity claim in federal court. As a matter of Pennsylvania law, count one is not saved by section 5535A. In the case of Duquesne Light v. Pennsylvania Public Utility Commission, the court had to consider whether section 5535A applied to a tribunal such as the Public Utility Commission. Duquesne Light held that 5535 applied only to tribunals within Pennsylvania's unified judicial system, which did not include the PUC. 42 Pennsylvania Statutes 301 defines Pennsylvania's unified judicial system. Not within that definition are federal courts. They are not part of the Pennsylvania uniform judicial system. Therefore, according to the Commonwealth Court holding in Duquesne Light, 5535 would not save count one of the complaint. Judge, I'm Robert DeWallace. Sorry. I made that mistake initially, and it's because our list actually has Mr. Ryder down and he's going first. My apologies, Mr. DeWallace. I recognize that the general force of the guarantee trust rule, district courts and diversity are essentially interchangeable with state courts, but does it not make a difference when we're talking about the interconnections between a federal bankruptcy court and a federal district court, which are essentially one court with two different functions? I'm sorry, Judge. I don't say that it does, Your Honor. The bankruptcy court complaint was dismissed. I know of no statute or saving provision that would allow the district court to dovetail on the bankruptcy court decision. The final basis for the-  I'm sorry. It does not seem to challenge on this appeal the basic finding that there was a breach of contract here when you acquired it. That's not the issue. Judge, I think we're precluded from arguing a contrary position because that issue really went up and down the circuit when the case was in the bankruptcy court, so I think we're The district court also utilized federal rule 15 to save count one of Jewel Court's complaint. I do not believe that rule 15 comes close to saving that complaint. Rule 15 allows a court to permit an amended pleading to relate back only if the claim or defense asserted in the pleading arose out of conduct, transactions, or occurrences set forth in the original pleading. The basic flaw of the district court's analysis with regard to 15 is there was no amended complaint in this case. The original complaint is filed, survived through the end, although one count was dismissed or settled, and there simply was no amended complaint. What the district court did, and would think it was improper, was to meld the 1994 bankruptcy court complaint with the complaint filed in this action, but the 1994 bankruptcy court complaint did not involve the same conduct, transaction, or occurrence as the 1999 district court complaint. The 1994 bankruptcy court complaint concerned the alleged failure of M&G to consent to a sublease of the premises in 1990 and the alleged unjust enrichment of M&G when it accepted rent from the Salvation Army. Count 1 of the instant complaint concerns the 1992 changing of the locks on the premises. The 1994 bankruptcy court complaint corresponds to Count 2 of the instant complaint and Count 6 of the instant complaint, both of which were dismissed, the first of which was dismissed on the basis of the statute of limitations, and the second one was withdrawn by opposing counsel. Our view, judges, is that the statute of limitations is a controlling issue in this case. I think the district court just got it wrong when it held that Count 1 did not survive the statute of limitations argument. I would next like to address the issue of attorney's fees. Paying attorney's fees in a non-statutory fee-shifting case must be reasonable. The prime determinant of reasonableness is the amount involved and the results obtained. This is right in Rule 1.5 of the Rules of Professional Conduct. Here, the damages award was $440,000. The attorney's fee award was nearly half a million dollars, $498,000. It's important to note that this is not a civil rights case where proportionality is not required. This is commercial litigation. The inquiry should be, is it reasonable to expend half a million dollars in attorney's fees to recover $440,000 in damages? The complaint in this case was filed July 15, 1999. Juul Court seeks attorney's fees beginning on January 3, 1995, four and a half years before the litigation started. The majority of the pre-July 15, 1999 time relates to Juul Court's efforts to assume the lease in the bankruptcy court. Lease assumption is a bankruptcy issue governed by Section 365 of the Bankruptcy Code. It's not an issue involved with this lease. The total fees sought, $168,678.68, relate to lease assumption. Further, in order to obtain an award of attorney's fees, Juul Court must be the prevailing party. In fact, Juul Court did not prevail on most of the issues decided by the court. In Hensley v. Egerhardt, the United States Supreme Court had to determine whether a partially prevailing plaintiff could recover attorney's fees for legal services on unsuccessful claims. The court held that when a plaintiff fails to prevail on a claim that is distinct, the hours spent on the unsuccessful claim are not compensable, and where the plaintiff achieves only limited success, the district court should award only the amount of fees that is reasonable in relation to the results obtained. Hensley also held that attorneys must maintain billing records that allow the court to distinguish between successful and unsuccessful matters. The complaint contains eight counts, six against M&G and two against the Salvation Army. The counts are distinct in legal theory and other facts. Count 1 is for breach of contract relating to a change in the vlogs in 1991. Count 2 is for breach of contract due to M&G's alleged failure to consent to sub-leases in 1990. Count 3 is for a breach of lease for M&G's alleged failure to consent to a sub-lease in 1995. Count 4 is for an alleged intentional interference with prospective and existing contractual relations in 1995. Count 5 is for unjust enrichment relating to events that occurred in 1991. And Count 6 is for unjust enrichment for M&G's receipt of rent payments from the Salvation Army between 1991 and 1995. These are distinct claims, and Juul Court was obligated, if it wanted attorneys fees, to maintain billing records that would probably allocate the time as among these various claims, most of which they lost, but which the district court is compensating them for in its award of attorney fees. The next issue the court directed the parties to address was the prejudgment interest issue. A motion for prejudgment interest must be brought within 10 days of judgment pursuant to Federal Rule 59. Courts that have interpreted have determined that Rule 59 is jurisdictional, and we benefit by having a United States Supreme Court case directly on point, and that is Osternick v. Bernstein. We determined that a claim for both discretionary and for mandatory interest had to be brought under Rule 59. The appellees have also argued that somehow Rule 60A applies to these facts. The record doesn't support Juul Court's claim, however. They made that argument to the district court, and the district court specifically held at 2072A of the record. Therefore, the absence of an award of prejudgment interest in the judgment was not an oversight or mistake, and Rule 68 is inapplicable. Certainly, the district court was the most competent judge as to whether or not a mistake or clerical error was made, and it considered and determined that one had not been made. I believe I have exceeded my time. Thank you. We'll have you back on rebuttal. Thank you, Judge. Thank you, Judge. Since Mr. Newallis raised the issue of a cross-appeal during his case, I don't reserve any time. I'll just proceed with my argument without reserving. Let me begin with the statute of limitations issue addressed by Mr. Newallis. It really is a two-pronged issue, and that is whether or not the two-year or the four-year statute of limitations applies. If the four-year statute of limitations applies, there is no question that the 1994 complaint that was filed in the bankruptcy court was timely. The breach in question was from 1991, but acknowledging that the court would determine that a two-year statute would apply, the 1994 adversary complaint in the bankruptcy court would be untimely. We believe that the law is very, very clear, and Judge Newallis found that the law was clear in determining that there was a four-year statute of limitations. The case of authority that we relied upon was Pew v. Holmes, that a lease is a contract, contract claims are addressed under 5525-8, and MMG's assertion that a two-year statute applies just has no legal support whatsoever. In its main brief, it made the blanket statement that a two-year statute of limitations applies and that the court can look at what the complaint says as opposed to what it says, which I would disagree with that construction, but cited no legal authority for a two-year trespass-related statute applying to a breach of lease circumstance. They cite two cases in a reply brief, Mr. Newallis addressed both of them, the Farr case. While that was a landlord-tenant case, it was somewhat dated back in the terms of distraint, and what that court did was when they went in and locked the tenant out of the premises and confiscated the personal belongings of the tenant in violation of the statutes that were in place at that time, the court ruled that anybody that participated in that ex parte taking, in violating that statute, engaged in a trespass, but having nothing to do with the breach of lease agreement whatsoever. The other case is even more troubling, the Crestani case, that talked about the two-year statute in light of the amendment to the rules. That was a PennDOT contractor doing damage to an adjoining landowner's property while they were performing a contract for PennDOT, and the court determined properly so that that contractor doing work, causing off-site problems, a trespass, and the injured party was not a party to the contract. There's just no authority whatsoever for the proposition that a two-year statute applies here. With respect to 5355, the savings clause, I would agree that in the absence of a tolling or a savings statute, the filing of one case in one form, whether it's state or federal, doesn't toll the running of the statute of limitations in another form. That's why legislatures create tolling and savings statutes like they did in Pennsylvania in this case. Except in New Jersey. Except in New Jersey. Except in New Jersey. I know the Supreme Court took a diversity case. It wasn't a diversity case. It was dismissed by the federal court because of that jurisdiction. Now, when the suit was brought in the state court, it was too late. It would have been finally if it had been brought when the Fenton case was brought. The court said, that's okay. Because in New Jersey, everything is okay. So they said, that's okay. The defendant knew you were suing. Therefore, I'm going to lay it back. The moral is that a New Jersey defendant should be moved to a Pennsylvania court. No, they should move themselves to Pennsylvania. That's what they have to do to be safe. We believe that 5535 provides the district court with all it needed to find the timely file of 1994 action. Let me address the 15B argument very quickly. The district court found that the 1996 amended adversary complaint, which raised additional claims against M&G as well as the Salvation Army, related back to the 1994 filing for the reason that before I said it was a timely file plea. The issue in relation back is not the claim. The issue is event, transaction, or concurrence. They were the underlying facts. In the 1994 filing, there were ample facts and ample allegations that M&G was acting in contravention of Juul Corps' rights and interests in the property, including leasing it, locking them out, and leasing. So the court properly determined that under Rule 15, that relation back from 1996 to 1994 was appropriate. We believe that the savings, and we moved, when Mr. Duvall was challenged jurisdiction, or M&G challenged jurisdiction in the adversary proceeding, we moved to withdraw reference in light of that. And Judge Nealon determined that if the bankruptcy court determines it doesn't have jurisdiction, we can file our diversity action. And ultimately, that's what happened. That's what happened several years later. But 5535 is a statute that doesn't have the narrow construction and perhaps meaningless construction that Mr. Wallace is trying to force on this court. The Third Circuit in Stinson has addressed the broad scope of 5535 and determined, based upon the official note, that the statute, that it's patterned after the New York statute, the New York statute had plenty of law on it indicating it was broad, intended to save cases. And this court in Stinson in 1992, I believe, in 1992 determined that most claims that are disposed of are non-merits-based decisions and are refiled within one year, the statute is told. It doesn't talk about state court, it doesn't talk about federal court, it talks about a proceeding dismissed, and it has several exceptions. Stinson applied one of those exceptions. It was a federal court action, it was dismissed, and a subsequent federal court action was applied. Stinson found 5535 applicable, but one of the exceptions under 5535 is a personal injury action. Mr. Rohnert? Yes, Your Honor. Help me with what Judge Neelan has to say. He says, defendants claim, compiling the complaint in the bankruptcy court, doesn't toll the statute of limitations here because an action in the United States court would not toll the running of the statute of limitations in a state court. While this recitation of Pennsylvania case law is correct, it does not follow that in diversity actions, this court must be viewed as a state court and, in effect, a separate jurisdiction from the U.S. bankruptcy court. Why shouldn't Judge Neelan's court be viewed as a state court? Well, because the legal authority for it, I think it needs to be looked at as a state court to the extent that they want to ensure that a litigation in diversity in federal court and a litigation in state court over the same issues would have substantially the same result. But even in guarantee trust, which M&G relies upon, recognizes that there are two separate and distinct court systems. The goal, through what the hearing is, is to make sure that the decisions are nearly the same. But how do you get the same result if Judge Neelan holds on to a case and the state court wouldn't? Because of the bankruptcy court filing, we believe that the matter could have been filed in state court and be saved by the tolling statute, 5535. That doesn't seem to be the... I get the impression from this that Judge Neelan thought that it would not have been reserved in the state court. It's clearly what he said. It wasn't an issue he focused more on. So you think his analysis was wrong? I disagree with his analysis. Whether it's wrong or not is for this panel to decide. I don't think it has to decide on that issue. But there is no authority that a federal court case dismissed and a federal court case filed within the year is not tolled. That is not addressed under Pennsylvania law that we have been able to determine. We believe that the broad construction of 5535 by the court in Stinson and, more recently, the Pennsylvania footwear case by Chief Judge Chauvin in the bankruptcy court that amplifies Stinson, which provides the legislative history of New York and the broad interpretation of the statute. So we believe it's properly saved under 5535. Judge Chauvin was really just looking at the history of the New York statute, wasn't he? Correct. And the legal authority of the case law that had been developed in New York talked about the broad application and the intent of the New York legislature to save the cases, except those that are expressly carved out in the exceptions in the New York statute. Are you fine? Pardon me. Let me go to the... Let me go to the... Mr. Wallace didn't address the damage issue. That was one of the five issues for the limitation of liability provisions. Unless your honors have a question about that in light of... I'll move forward and rest on our briefs. With respect to the attorney's fees provision, this case was litigated for years. It was litigated, and we sought fees back in 1995, and it can be couched as bankruptcy court motion to assume, but that motion to assume and the litigation that was done in that bankruptcy court led to preclusive findings that barred M&G, in this case, from defending on the breach of contract basis. The fees that were incurred and were expended litigating the rights of the parties under the lease in the bankruptcy court directly benefited, streamlined this case, and under the New York Gaslight case that we cited to your honors, is appropriate. Related proceedings, as long as they relate to the underlying action which the fees are sought, there's nothing inappropriate with that. Significantly, this case, it's not a statutory fee-shipping case, as counsel previously advised, but if the attorney's fees provision in question, the attorney's fees provision in question, section K of the lease, provided two wings, and that is any fees or expenses incurred enforcing a right and then dealing with, if litigation goes, all fees. So there are really two bases. We went through a tortured process to find these. It's an abusive discretion standard, and we believe that Judge Neyland was appropriate in that. Let me address briefly the cross-appeal in the Rule 59E60 issue. This circuit, this circuit since at least 1972, has determined that mandatory prejudgment interest and motions relating to mandatory prejudgment instance are appropriately filed as Rule 68 motions. There is no dispute in this case that, if it's a contract claim, there is no dispute in this case that the law in Pennsylvania under these circumstances provides for prejudgment interest by statute of 6%. There's no dispute in this case that those fees, that the amount of damages with the damage calculation that we provided for the months that we were out of possession, were determined. So the calculation of the 6% prejudgment interest rule was a ministerial act since 1972, or I haven't looked earlier on that, but the Glick case. That's been the law in this circuit. Osternap, as your honors know, addressed discretionary prejudgment interest with dropping a footnote, saying there should be no difference. Well, this circuit has continued to follow Glick on that particular issue. In fact, most recently in FISA, which I believe Judge Pollack was on, this court, after Osternap, provided that for mandatory prejudgment interest, the appropriate vehicle is 60A. And if I could just have 30 more seconds, your honor. And there have been numerous decisions in the district courts. The Pincus Brothers and Coletti are standing for that proposition. If this court were to decide that this case is the time to now follow the 1980, 88, or 89 Osternap decision and create a right line to avoid mandatory discretionary issues, which it has not done to this point, and I'm not urging the court to do that, but if this court were so inclined to say despite FISA and despite Rucker, which was a, despite Rosen v. Rucker, which was a delay damage case on the same issue, we would strongly recommend and suggest that the court follow the procedure that the First Circuit did in the Crow case, that because of the established body of law, allow, make the ruling for a right line on a perspective basis only. Thank you, your honor. If you have any further questions, I have nothing else. I don't have any. Thank you. Thank you, your honor. Mr. Gualos with the. I just have three points that I think I can address in the minute I have reserved. First of all, I think it's well in Congress for Mr. Rainer to argue whether or not this court should decide to follow Ostronek. There's no discretion. It's a Supreme Court case. It has decided this issue, and you are obligated to follow Ostronek, and Ostronek clearly says whether it's discretionary or legal interest, it's governed by Rule 59. Secondly, Mr. Rainer, in addressing Section 5535, just neglected to address the one Pennsylvania appellate court case that has interpreted it with relationship to where it applies, that is Duquesne Light, and specifically held that it does not apply to cases outside of Pennsylvania's unified judicial system. That's binding, I think,  5535 does not save the cause of action. And lastly, reference is made to the 1994 bankruptcy court complaint, but it's essential that that complaint be read and not just referred to, and I thought it important enough that in addition to being designated in the appendix at 1537A, I reproduced it in my reply brief beginning on page 6. It clearly addresses only two issues, and none of the issues relate to the subsequent amended complaint or the 1999 complaint in the district court. They're just apples and oranges. They aren't the same causes of action. Thank you, judges. Thank you. We thank both the counsel. We'll take the case under advisement, and we'll take a very brief recess. Thank you.